[Cite as *State v. Jeffries*, 2018-Ohio-2010.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170176 |
| | | TRIAL NO. B-160916 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| PAULA JEFFRIES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 23, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}   Paula Jeffries appeals her convictions for operating a motor vehicle while under the influence ("OVI") and driving under an OVI suspension.  She argues that the trial court erred by allowing the prosecutor to exclude a potential juror based on race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  She also argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  We conclude that her assignments of error have no merit, so we affirm the trial court's judgment.

### *The Trial*

{¶2}   At trial, Jeffries stipulated that she had three prior OVI convictions within six years of the current offenses.  In addition, she agreed that at the time of the current offenses, her driver's license had been suspended for a prior OVI conviction, and that she had been convicted of driving under an OVI suspension within the previous six years.

{¶3}   A police officer testified that he was driving his patrol vehicle at about 2:45 a.m. when a black sedan driving in the opposite direction crossed the center line and came directly at him.  The officer was forced to maneuver his vehicle to the curb to avoid a collision with the oncoming car.   Then he activated his vehicle's overhead lights and began to pursue the sedan.

{¶4}   The driver of the sedan made a wide turn onto another street before coming to a stop.  The officer stopped his vehicle behind the sedan and began to get out, when the sedan driver suddenly drove away at a high rate of speed.

{¶5}   Based on the officer's knowledge of the road, he knew that the sedan driver would probably not be able to navigate the upcoming sharp turns in the road

2

at that speed. When the officer got back into his vehicle, he heard the sounds of a crash through his vehicle's open window.

{¶6} The officer drove less than a hundred yards to the site of the crash. The sedan had gone through a guardrail and into trees, and smoke was coming from it. Even though the ground was snow-covered, the officer was concerned that the sedan's engine would catch underlying dry leaves and grass clippings on fire. He approached the sedan quickly. At first, he was unable to see anyone in the sedan due to its tinted windows. As he got to the driver's door, he used his flashlight to look in the window. He saw Jeffries jump out of the driver's seat and climb between the front bucket seats into the back seat of the sedan. He radioed that the driver was climbing into the back seat.

{¶7} The sedan was off the roadway, wedged between a guardrail and trees. The driver's door could not be opened enough for the officer to reach in and turn off the engine. Neither of the passenger-side doors could be opened because they were blocked by trees, and none of the sedan's windows were open. The officer opened the rear door on the driver's side and, upon seeing that Jeffries was uninjured, told her to get out. At that time, the officer testified, his only concern was to get Jeffries safely out of the sedan before a fire occurred.

{¶8} The officer walked Jeffries back onto the roadway to a safe distance from the crashed sedan. He noticed that Jeffries had bloodshot eyes and a strong odor of alcohol about her. He described Jeffries's speech as "slurred and excited at times." Jeffries told the officer that she had not been driving. She said that a guy had been driving and had run away. The officer asked who and where the guy was, and she said she did not know. Jeffries informed the officer that she was urinating on herself.

{¶9} The officer asked Jeffries for her identification. Instead of getting her identification, Jeffries got her cell phone out of her purse and began using it. She

told the officer that the sedan belonged to her sister. Jeffries urinated again as she stood next to the officer. The officer asked Jeffries to recite the alphabet, but she refused and insisted that she had not been driving. The officer testified that, in his opinion, Jeffries was under the influence of alcohol and her ability to operate a vehicle was appreciably impaired as a result. He placed her under arrest.

{¶10} The officer testified that he walked back toward the sedan and noted that the only footprints in the snow on the ground surrounding the sedan had been made by him and Jeffries.

{¶11} At the police station, Jeffries admitted that she had been at a club that evening and had drunk three or four glasses of vodka. She refused to submit to a breath test, stating, "[Y]ou know I've been drinking."

{¶12} Jeffries's sister Crystal testified for the defense that she loaned her black Nissan Altima to Larry Johnson, so he could take Jeffries to a club. According to Crystal, the three of them were at the club until closing, when Johnson and Jeffries left in Crystal's car. Johnson was driving.

{¶13} Johnson testified that he was driving Crystal's car when the police officer tried to stop the car. He said he crashed the car, got out of the driver's door and ran away, leaving Jeffries alone in the car. Johnson claimed that the driver's side of the car had remained on the dry roadway after crashing through the guardrail.

{¶14} Jeffries also testified that Johnson had been driving and that, after the crash, Johnson had gotten out of the driver's door and run away.

{¶15} At the conclusion of the evidence, the jury found Jeffries guilty of the charged offenses.

### *The Batson Challenge*

{¶16} In her first assignment of error, Jeffries argues that the trial court erred by allowing the prosecutor to exercise a peremptory challenge to an African-American prospective juror on the basis of race, in violation of her equal-protection rights under *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

{¶17} *Batson* provides a three-step procedure for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008); *State v. Murphy*, 91 Ohio St.3d 516, 528, 747 N.E.2d 765 (2001). First, the opponent of the peremptory challenge must make a prima facie showing of discrimination. *Batson* at 96; *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 20. Second, the burden shifts to the proponent to provide a race-neutral explanation for the challenge. *Batson* at 97; *State v. Herring*, 94 Ohio St.3d 246, 255-256, 762 N.E.2d 940 (2002). Third, the court must determine, under the totality of the circumstances, whether the opponent of the challenge has proved purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *State v. White*, 85 Ohio St.3d 433, 436, 709 N.E.2d 140 (1999). At the third step, the court must consider the circumstances of the challenge and assess the plausibility of the proponent's explanation in order to determine whether it is merely pretextual. *Johnson* at ¶ 21; *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

{¶18} The trial court's finding at step three "is entitled to deference, since it turns largely 'on evaluation of credibility.' " *White* at 437, quoting *Batson* at 98. Therefore, a trial court's ruling on the issue of discriminatory intent will not be reversed on appeal unless it is clearly erroneous. *See Hernandez v. New York*, 500

U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶19} During voir dire in this case, the trial court asked an African-American prospective juror, after listening to the questions posed by the court and counsel, "Has anything come to your mind that we ought to know about?" The prospective juror responded that he had been "pulled over for DUI."[1] He denied that the experience would cause him to favor either the state or the defense.

{¶20} Then the following exchange took place between the prosecutor and the African-American prospective juror:

[THE PROSECUTOR]: If you need to go out of the presence of everybody else, please say so. I think you folks here heard me say we're not trying to pry too much into your lives or anything like that, but part of jury selection is being honest and open, so if we start to get into stuff that hopefully that's not something that's embarrassing, but at the same time if you would like to discuss that more in private, please feel free to do so.

Mr. [Prospective Juror 16], I'm sorry to ask about this, but you said you got pulled over for DUI. I think you heard Mr. [Prospective Juror 8], who was sitting in that exact same chair, he talked about when he got pulled over for DUI.

Did you get charged with a DUI?

PROSPECTIVE JUROR 16: No, I didn't get charged. It got dropped to reckless driving.

{¶21} When the prosecutor used a peremptory challenge to excuse the African-American prospective juror, the defense raised a *Batson* challenge.

---

[1] The record reflects that the parties used the terms "OVI" and "DUI" interchangeably.

{¶22} The prosecutor gave two reasons for the challenge: (1) the prospective juror, like Jeffries, had been pulled over for DUI; and (2) the prospective juror lacked attention to detail because he likely had been charged with DUI and later pled to the lesser charge of reckless driving. The trial court did not agree that the prospective juror's response to questioning about his traffic stop evidenced a lack of attention to detail. But the court agreed that because the prospective juror had been pulled over for DUI, he might "consider his experience with that stop relevant to the [d]efendant's stop." So the court rejected the *Batson* challenge, finding a race-neutral explanation for the excusal.

{¶23} On appeal, Jeffries argues that the prosecutor's explanation—that the prospective juror lacked attention to detail—was self-serving and removed an otherwise unbiased and qualified juror on the basis of race. However, as we have explained, the prospective juror's lack of attention to detail was not the reason accepted by the trial court. Rather, the court accepted as credible and race-neutral the prosecutor's explanation that the juror had been pulled over for DUI, the same offense that Jeffries was being tried for.

{¶24} The prosecutor's valid race-neutral reason for challenging the prospective juror was supported by the record. Because the trial court had the opportunity to observe the prosecutor's demeanor, it was in a better position to evaluate his credibility in providing the rationale for the peremptory challenge. *See State v. Gowdy*, 88 Ohio St.3d 387, 393-394, 727 N.E.2d 579 (2000), citing *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859, 114 L.Ed.2d 395. We conclude that the trial court's determination that the prosecutor offered a race-neutral explanation and lacked a discriminatory intent was not clearly erroneous. Therefore, we hold that the trial court did not err by overruling Jeffries's *Batson* challenge. We overrule the first assignment of error.

*Weight and Sufficiency*

{¶25} In her second assignment of error, Jeffries challenges the weight and sufficiency of the evidence supporting her convictions. Jeffries argues that the state failed to prove that she operated the car. As a result, she contends, she could not be convicted of OVI or of driving under an OVI suspension. She claims that the only evidence of operation came from the testimony of the police officer who was less credible than her own witnesses.

{¶26} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶27} Following our review of the record, we hold that a rational juror, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that Jeffries had committed the offenses of OVI and of driving under an OVI suspension. Therefore, the evidence was legally sufficient to sustain her convictions.

{¶28} Although Jeffries and her witnesses claimed that she was not driving the car at the time of the crash, the weight to be given the evidence and the credibility of the witnesses were primarily for the jury to determine. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Moreover, our review of the record does not persuade us that the jury lost its way or created a manifest miscarriage of justice in

finding Jeffries guilty of the offenses.  This is not an "exceptional case in which the evidence weighs heavily against the conviction."  *See Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  Therefore, we hold that the convictions were not against the manifest weight of the evidence. We overrule the second assignment of error and affirm the trial court's judgment.

**Judgment affirmed.**

**MILLER** and **DETERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.